# FRANCES IRENE LEE *v.* STATE OF MARYLAND

[No. 1077, September Term, 1976.]

*Decided May 20, 1977.*

The cause was argued before MOYLAN, DAVIDSON and MOORE, JJ.

*Harry J. Lambeth, Assigned Public Defender,* for appellant.

*F. Ford Loker, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Nelson W. Rupp, Jr., Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

If the appellant were to prevail on this appeal, the criminal trial process would be caught in a "Catch 22" [1] wherein it could move neither forward nor back.

---

1. The phrase used in the novel of the same name by Joseph Heller to describe the "no win" situation in which World War II airmen found

The appellant, Mrs. Frances Irene Lee, was convicted in the Circuit Court for Montgomery County by a jury, presided over by Judge Richard B. Latham, of assault with intent to maim and the use of a handgun in the commission of a felony. Upon this appeal, she raises the single contention that the trial judge committed constitutional error when he refused to accept her proffered guilty plea and encouraged her to go forward with a trial upon the merits.

Prior to trial, the appellant had entered into a "plea bargain" with the State, whereunder the appellant would plead guilty to the charge of assault with intent to murder and the State would nolle pros the remaining counts of 1) assault with intent to maim, 2) assault and battery, 3) simple assault and 4) the use of a handgun in the commission of a felony. When the plea was tendered in court, Judge John F. McAuliffe was meticulously solicitous of the appellant's rights as he sought to explore the voluntariness of the guilty plea. After probing the routine questions as to the waiver of constitutional trial rights, Judge McAuliffe asked the appellant if she had assaulted anyone. She replied that she had — but with no intention of committing murder. Judge McAuliffe then asked, "Then why do you want to plead guilty to it?"

Appellant's counsel explained that the plea was being made under the guidelines of *North Carolina v. Alford,* 400 U. S. 25, 91 S. Ct. 160. 27 L.Ed.2d 162 (1970), whereunder a defendant may proclaim innocence and yet enter a guilty plea in order to negate the threat of greater punishment. The possibility of greater punishment in this case stemmed from the handgun charge which carried a mandatory minimum five-year sentence. Notwithstanding this articulation of defense strategy, Judge McAuliffe tried to communicate the thought that if one had a good defense to

---

themselves, when they sought to be relieved from combat on the grounds that they had suffered mental breakdowns. To wish to remain in combat was to be crazy, but no one in authority would question the decision. On the other hand, to wish to get out of combat was eminent evidence of good sanity, which status negated the only predicate for getting out of combat. This was "Catch 22."

the underlying felony and persuaded the fact finder in that regard, then the charge of committing a felony with a handgun would, of necessity, fall with it. The following colloquy took place:

"MR. LAMBETH: Your honor, this is an Alford plea. The State has the fifth count of the indictment, which would mean, I explained to Mrs. Lee, an automatic five-year imprisonment for the commission of a felony with a handgun, and, faced with that, we decided that the guilty plea to the first count, which was the only count that was offered us, was the best way to do it.

THE COURT: Where is the State going to get a felony if they can't get a specific intent crime out of this?

MR. LAMBETH: As I read the cases, shooting a person is an implication you intended to murder them, no matter if you intended to kill them.

THE COURT: Well, directing a firearm at a vital point of the body and pulling the trigger certainly may permit such an inference that you intended to kill them or do grievous bodily harm, but that is not an inference that cannot be overcome. Suppose the jury believes you that you didn't intend to hurt anybody or kill or maim him.

THE DEFENDANT: Your Honor, I didn't intend to even shoot him, but when he stepped toward me I didn't know what Mr. Stewart was going to do. I thought he was going to strike me or something, and I pulled the handgun, but I didn't intend to kill him. It was not my intention to go out there and kill him in the first place, just to go out and talk to him.

THE COURT: Do you understand that one of the charges that the State has against you is a charge which could result in your getting an automatic minimum of five years in prison?

THE DEFENDANT: Yes, sir.

> "THE COURT: That is the use of a handgun in the commission of a felony.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand that if you did not commit a felony you couldn't be found guilty of that, even though you used a handgun? Do you understand that?
>
> THE DEFENDANT: Yes, sir."

Judge McAuliffe then went right to the nub of the matter and received the following response:

> "THE COURT: Wouldn't you be more satisfied by taking your chances with a trial?
>
> THE DEFENDANT: Yes, sir."

Under the circumstances, Judge McAuliffe refused to accept the plea of guilty:

> "THE COURT: The Court will decline to accept a plea of guilty. Set the matter in for trial. Withdraw the plea of guilty to the first count and enter a plea of not guilty to all counts.
>
> Counsel, I'm not going to accept the plea of guilty. It would be impossible to sentence this lady, even on an Alford type plea, where she is denying the very thing that she wants to plead guilty to. How can the Court sentence under those circumstances? I think she is entitled to a trial, and if the State can prove beyond a reasonable doubt that she had a specific intent at the time she did this, so be it. At least the die will be cast and the judge who hears this case will know all the facts and circumstances and know what the trier of fact determines really happens. Certainly, she takes a risk of a mandatory five-year sentence, but she understands that.
>
> MR. LAMBETH: I have explained that to her, and in my conversations with her she doesn't want to take that risk.
>
> THE COURT: She just told me she did.

MR. LAMBETH: I know she did, but I don't know if that is what she meant.

THE COURT: You are going to have to be ironclad, absolutely definite and certain with me you don't want to take that risk before I accept a plea of guilty."

Defense counsel persisted and asked Judge McAuliffe to question the appellant further. Judge McAuliffe was particularly solicitous as to whether the appellant was making "an intentional relinquishment or abandonment of a known right"[2] because he had developed the fact that she had only completed the ninth grade and the further fact that she had been treated by a county psychiatrist during the years 1972 through 1975. He asked the following question and received the following response:

"THE COURT: Do you understand what we are doing, Mrs. Lee?

THE DEFENDANT: No, sir."

Questioning whether the relinquishment of the right to stand trial was truly the appellant's clear choice of action, he probed further:

"THE COURT: I am not satisfied that you really want to plead guilty to assault with intent to murder. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: It seems to me you would rather have a trial on that, from what you told me, is that right?

THE DEFENDANT: Yes, sir.

THE COURT: Well, I'm going to give you a trial. I will give you a chance to tell the jury."

Judge McAuliffe then declined to accept the guilty plea and the case was set in for a jury trial before Judge Latham.

---

2. *Johnson v. Zerbst*, 304 U. S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461, 1466 (1938).

254

Out of such raw material, the appellant has now spun a remarkable argument. She contends that "she was forced to trial when the court rejected her plea of guilty." She claims that the rejection of her guilty plea "was not based upon a sufficient factual basis, but was a decision in which the court substituted its own spur-of-the-moment personal view (without an evidentiary hearing) for that·of the appellant." She bases her present claim to the effect that she suffered "a violation of her rights under the 14th Amendment of the U.S. Constitution" upon the fact that she "did not really understand what was happening." She claims that the trial judge should not have permitted her to elect to stand trial when it "was obvious that the appellant became confused and did not really understand the process, having never participated in a trial before her present experience." She claims that the election to stand trial was invalid because "it is obvious that the appellant was completely confused. All of her answers were two word responses, one 'No, sir' and the rest, 'Yes sirs'."

The appellant claims, in effect, that she did not knowingly and intelligently waive her "constitutional right" to enter a guilty plea and that when her guilty plea was rejected, she was thereby denied due process of law.

The appellant's thesis must be denied for any of four closely related reasons, which are, in ascending order of persuasiveness: 1) it has no basis in logic; 2) it has no basis in federal constitutional law; 3) it is flatly contrary to both Maryland law and to Maryland's interpretation of federal constitutional law; and 4) it is inherently preposterous.

### 1. An Affirmative Right Does Not Imply Its Converse

The appellant, who because trial decisions are presumptively correct bears the burden of proof at this level, offers no authority — constitutional, statutory or decisional — to support her proposition that there is a constitutional right to have a guilty plea accepted. She reasons purely from logic that the existence of the right to stand trial necessarily implies the existence of a correlative right not to stand trial; which is to say, the right to due process implies the right to

be free of due process. The proposition will not hold water either in logic or in American constitutional experience.

The existence of "A" does not imply the existence of "non-A". It rather tells us nothing whatsoever about whether "non-A" exists or not. Chief Justice Warren said as much for a unanimous Supreme Court in *Singer v. United States*, 380 U. S. 24, 34-35, 85 S. Ct. 783, 13 L.Ed.2d 630, 638 (1965):

> "The ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right."

The right to do something simply does not necessarily imply the right to do the opposite. When we sometimes lose our bearings, we must look for the seminal landmarks. When the far-flung implications appear blurred, we must return to basics.

The constitutional right which we are talking about, the full dimensions of which were painfully hammered out only over the course of decades, is *the right to stand trial* — with its full matrix of other necessarily engaged constitutional rights, including the right to trial by jury, *Duncan v. Louisiana*, 391 U. S. 145, 88 S. Ct. 1444, 20 L.Ed.2d 491 (1968); the right to be free of compelled self-incrimination, *Malloy v. Hogan*, 378 U. S. 1, 84 S. Ct. 1489, 12 L.Ed.2d 653 (1964); the right to confront one's accusers, *Pointer v. Texas*, 380 U. S. 400, 85 S. Ct. 1065, 13 L.Ed.2d 923 (1965); the right to the assistance of counsel, *Gideon v. Wainwright*, 372 U. S. 335, 83 S. Ct. 792, 9 L.Ed.2d 799 (1963); etc., etc. This is the fundamental trial process wherein we, as a people, have lodged our faith that justice will fairly be done. The judgment may be hard; it may be soft; we demand only that it be justly arrived at. The constitutional right which is the foundation of our discussion is the affirmative guarantee of a full and fair trial and not some negative reflection thereof. *It is the right to stand trial and not the right not to stand trial.*

A rapid running of the Bill of Rights makes this truth self-evident. The right not to have troops quartered in one's

private home except in time of war does not imply the equal and correlative right to have them so quartered. The right to bear arms does not imply the equal and correlative right to be excused from bearing arms. The right to be free from unreasonable search and seizure does not imply the equal and correlative right to be subjected to unreasonable search and seizure. The right to be indicted by a grand jury does not imply the equal and correlative right not to be indicted by a grand jury. The right to be free of double jeopardy does not imply the equal and correlative right to be subjected to double jeopardy. The right not to be compelled to be a witness against one's self does not imply the equal and correlative right to be a witness against one's self.[3]

The right to a public trial does not imply the equal and correlative right to a private trial.[4] The right to a speedy trial does not imply the equal and correlative right to a delayed trial. The right to a jury trial does not imply the equal and correlative right to a non-jury trial.[5] The right to a jury drawn from the vicinage does not imply the equal and correlative right to a jury not from the vicinage.[6] The right to confront one's accusers does not imply the equal and correlative right to be shielded from one's accusers.[7] The right to be free from cruel and unusual punishment does not imply the equal and correlative right to be subjected to cruel and unusual punishment. The right to be free from excessive fines and excessive bail does not imply the equal and

---

**3.** Indeed, a criminal defendant has no constitutional right to testify. Long after the adoption of our Constitution, including its Fifth Amendment, a criminal defendant was universally disqualified as a witness by virtue of his very status as a defendant. That testimonial disqualification was only removed, *by statute*, in the federal courts in 1878, and in Maryland in 1876. *State v. McKenzie*, 17 Md. App. 563, 576-579, 303 A. 2d 406.

**4.** *United States v. Kobli*, 172 F. 2d 919, 924 (3rd Cir. 1949).

**5.** *Singer v. United States*, 380 U. S. 24, 85 S. Ct. 783, 13 L.Ed.2d 630 (1965). In Maryland, of course, a defendant does, coincidentally, have a right to a non-jury trial, but this is so by virtue of the common law of Maryland and the Maryland Rules of Criminal Procedure, Rule 741, and not by virtue of any mirror image from the Sixth Amendment. *Miller v. Warden*, 16 Md. App. 614, 299 A. 2d 862.

**6.** *Platt v. Minnesota Mining & Mfg. Co.*, 376 U. S. 240, 245, 84 S. Ct. 769, 11 L.Ed.2d 674, 679 (1964).

**7.** *Singer v. United States, supra*, 380 U. S. at 35.

correlative right to be subjected to excessive fines and excessive bail.

Put all of them together and what emerges is the self-evident truth that the right to have a fair trial does not imply some equal and correlative right to avoid a fair trial.

### 2. The Infirm Constitutional Foundation

In locating the cornerstone of her argument, the appellant in her brief is, at least, prophetic:

> "The solid foundation for this appeal is the U.S. Supreme Court's decision in *North Carolina v. Alford*, 400 U. S. 25; 91 S. Ct. 160; 27 L.Ed.2d 162 (1970)."

Unfortunately, from the appellant's point of view, that "solid foundation" is made of sand.

In *North Carolina v. Alford*, the defendant offered a guilty plea to a charge of murder in the second degree, notwithstanding the fact that he denied having been the homicidal agent. After fully probing in all relevant regards the voluntariness of the guilty plea, the trial judge accepted it and sentenced Alford. Alford subsequently had the bad grace to complain that his guilty plea was not voluntary. The sole issue before the Supreme Court was that of whether a denial of criminal agency will, *ipso facto*, vitiate the voluntariness of a guilty plea, unexceptionable in all other respects. The holding of the Supreme Court was simply that that fact would not invalidate an otherwise voluntary plea. The Supreme Court said, at 400 U. S. 37:

> "[W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."

The issue before the Supreme Court was the voluntariness of a plea which was accepted and later challenged by the defendant himself. It did not remotely address the obligation of the judge to accept a plea or the *right* of a defendant to have a plea accepted. Indeed, the entire argument swirled about the defendant's claim that his plea should *not have been accepted.* The Supreme Court continuously referred to a plea as a waiver of the right to stand trial and consistently insisted upon the conditions that it be "voluntarily, knowingly, and understandingly" [8] made. The Court was clear that "[t]he prohibitions against involuntary or unintelligent pleas should not be relaxed." [9]

One cannot extrapolate from anything in *North Carolina v. Alford* the notion that a defendant has a constitutional right to have his guilty plea accepted. Indeed, *North Carolina v. Alford* expressly precludes such a notion. It states clearly that the states have the unquestioned constitutional right to prohibit altogether the practice of taking guilty pleas. The Supreme Court said, at 400 U. S. 39:

> "The States in their wisdom may take this course by statute or otherwise and may prohibit the practice of accepting pleas to lesser included offenses under any circumstances."

To make very certain that its holding in *North Carolina v. Alford,* dealing only with the voluntariness of a plea made and accepted, could not be twisted as the appellant would now twist it, the Court, at 400 U. S. 38, n. 11, expressly limited its holding:

> "Our holding does not mean that a trial judge must accept every constitutionally valid guilty plea merely because a defendant wishes so to plead. A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court . . ."

---

8. 400 U. S. at 37.
9. 400 U. S. at 39.

In *Lynch v. Overholser*, 369 U. S. 705, 82 S. Ct. 1063, 8 L.Ed.2d 211 (1962), the Supreme Court dealt with a factual situation somewhat closer to that at bar. There, a defendant had sought to withdraw a plea of not guilty and to enter a plea of guilty. Believing that the defendant had a legitimate defense based on insanity, the trial judge refused to accept the guilty plea and required the defendant to go to trial. The ultimate holding dealt with other issues, not here pertinent, but the Supreme Court indicated clearly that a trial judge may always refuse to accept a guilty plea, saying at 369 U. S. 719:

> "This does not mean, of course, that a criminal defendant has an absolute right to have his guilty plea accepted by the court. As provided in Rule 11, Fed. Rules Crim. Proc., and Rule 9, D.C. Munic. Ct. Crim. Rules, the trial judge may refuse to accept such a plea and enter a plea of not guilty on behalf of the accused."

The difference between the constitutional right to stand trial and its converse may be more readily perceived if we pause to appreciate the difference between the two values which are implicated. We, as a people, have a high degree of solicitude to see that no innocent person is wrongfully convicted. We, therefore, hedge the waiver of the right to stand trial with severe limitations. We do not possess the same degree of solicitude over the opportunity of a guilty person to negotiate his way into a lesser sentence. The interests at stake are of a very different order.

### 3. The Maryland Law

The Maryland Rules of Procedure explicitly state 1) that a judge may always refuse to accept a plea of guilty or strike out a plea of guilty after it has been made and 2) that if he is in a state of doubt as to what the plea should be, he enters a plea of not guilty on behalf of the defendant. The pertinent rules provide:

> "Rule 721. *Refusal to Plead or to Accept Guilty Plea.*
> The court may refuse to accept a plea of guilty. If an accused refuses to plead, or if the court has

refused to accept a plea of guilty, the court shall enter a plea of not guilty.

Rule 722. *Change of Plea of Guilty.*

The court may strike out a plea of guilty at any time and enter a plea of not guilty, if it deems such action necessary in the interest of justice."

Our case law is equally unambiguous. In *English v. State,* 16 Md. App. 439, 440-441, 298 A. 2d 464, we discussed both the Maryland Rules and the constitutional principle:

"An accused in a criminal proceeding has no constitutional right to plead guilty. He may so plead in Maryland by a rule of procedure, Maryland Rule 720. . . . However, the trial court may refuse to accept a plea of guilty, Rule 721, and it may strike out a plea of guilty at any time and enter a plea of not guilty, if it deems such action necessary in the interest of justice, Rule 722. Thus the court has broad discretion to refuse to accept a plea of guilty tendered and to strike out a plea of guilty entered. *Taylor v. State,* 7 Md. App. 558. The accused, cloaked in the presumption of innocence and protected by the full panoply of his constitutional rights, then stands trial upon a plea of not guilty before the trier of fact and law . . . to be convicted only upon the State meeting its burden of proving the *corpus delicti* and his criminal agency beyond a reasonable doubt."

### 4. "Catch 22": Reverse Waiver

The most foreclosing answer to the appellant's contention, however, is the untold mischief that would be unleashed if her argument were to prevail. She has turned the Constitution on its head. She has taken every constitutional principle militating against the waiver of constitutional rights and pointed them in a diametrically opposite direction. By equating "the waiver of a constitutional right" with "the waiver of the opposite of the constitutional right" she has, in effect, equated "waiver" and "non-waiver." She

has thereby placed the trial judge in an untenable position where, when the proof is in equipoise and does not point cleanly in either direction, he is procedurally paralyzed and unable to move in either direction.

We begin with the appropriate waiver standard, for present purposes, as defined by *Johnson v. Zerbst*, 304 U. S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461, 1466 (1938):

> "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege."

In the real world of affirmative constitutional rights, this translates:

> "A waiver [a plea of guilty] is ordinarily an intentional relinquishment or abandonment of a known right or privilege [the right to stand trial]."

In the appellant's distorted mirror world of opposites, this becomes:

> "A [non-]waiver [the decision to go to trial] is ordinarily an intentional relinquishment or abandonment of [the opposite of] a known right or privilege [a plea of guilty]."

Both propositions cannot be true lest all motion be paralyzed where a defendant's decision is equivocal, unsure, uninformed and full of doubt.

Where *Carnley v. Cochran*, 369 U. S. 506, 516, 82 S. Ct. 884, 8 L.Ed.2d 70, 77 (1962), commands, "Presuming waiver from a silent record is impermissible," the appellant would now have us read, "Presuming non-waiver from a silent record is impermissible." Where *Johnson v. Zerbst* commands, "[C]ourts indulge every reasonable presumption against waiver," the appellant would now have us read, "Courts indulge every reasonable presumption against non-waiver."

The same stringent standards obviously cannot apply to both the waiver of the right to stand trial and the non-waiver of the right to stand trial (to wit, the election to

stand trial). They must cleanly abut, so that anything less than voluntary and intelligent waiver of an affirmative right is, *ipso facto,* the non-waiver of that right. If we should ever end up in a phantasmagoric hall of mirrors where we could not presume from a silent record either waiver or non-waiver, where we indulged every reasonable presumption against both waiver and non-waiver, we would be frozen into stark inaction. We would be in "the eye" of a hurricane. A defendant who adamantly refused to plead at all, or who flip-flopped hopelessly, could sabotage utterly the trial machinery.

The appellant's argument, carried out to its logical limits, supplies its own refutation. To reach the correct resolution in this case, we need only ask what the situation would have been if Judge McAuliffe had accepted the appellant's plea of guilty, notwithstanding her explicit statement, twice repeated, that she wished to go to trial. She, or others similarly situated, would be banging at the appellate gates claiming that her right to stand trial had been unconstitutionally abrogated. Under those circumstances, she would probably be right. She cannot, however, have it both ways. The criminal trial process will not be trapped in a "Catch 22."

*Judgments affirmed; costs to be paid by appellant.*