575 A.2d 771

**Bernard Leon WARD, Jr.**

v.

**STATE of Maryland.**

**No. 1576, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

June 28, 1990.

Lester V. Jones (Frederic C. Heyman on the brief), Bel Air, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Frank R. Weathersbee, State's Atty. for Anne Arundel County, Annapolis, on the brief), for appellee.

Submitted before ROSALYN B. BELL, KARWACKI, and WENNER, JJ.

ROSALYN B. BELL, Judge.

The question presented by Bernard Leon Ward, Jr., appellant, is whether the trial judge erred by accepting his *Alford* plea.[1] At the close of all the evidence, Ward pleaded guilty, while denying his guilt in order to avoid greater

---

1. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

punishment, despite conflicting testimony concerning his whereabouts on the date and time of the crime.

The State raises a question of jurisdiction, namely, whether a direct appeal to this Court lies from an *Alford* plea. We hold that no direct appeal lies from an *Alford* plea and dismiss the appeal in accordance with Md.Cts. & Jud.Proc. Code Ann. § 12–302(e) (1974, 1984 Repl.Vol.). If the case were properly before us we would conclude, however, that the trial judge did not err by accepting the plea. We explain.

## FACTS

Ward was charged in the Circuit Court for Anne Arundel County with numerous crimes, including murder in the first degree, robbery with a deadly weapon, battery and assault. He pleaded not guilty and elected to be tried by a jury.

These charges stemmed from the murder of Edward Brewer, Jr. who left his parents' Baltimore County home on November 13, 1988. Brewer's partially clothed body was found on December 12, 1988 in the basement of an abandoned building in northern Anne Arundel County. He had been stabbed approximately 20 times and his neck was broken.

Ward was arrested on December 16, 1988 in Tallahassee, Florida, for Brewer's murder. After being advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Ward was asked about his knowledge of Brewer's death. Initially, Ward denied knowing anything. After being questioned, however, he admitted that he had gone to Leon's Bar, where Brewer had last been seen, at about 2:00 p.m. and had left at 10:00 p.m. on November 15, 1988. Ward then met an unidentified black male and a conversation ensued. The two men agreed to approach Brewer and solicit him for a sexual act in exchange for money. They did so and Brewer acquiesced. The three men left the bar and went to a parking lot with the understanding that the unidentified black man would

leave for 15 to 20 minutes to allow Ward and Brewer to complete their sexual act.

Apparently, the unidentified black male returned before the act was begun and stabbed Brewer. Ward did not, however, mention setting fire to Brewer's vehicle or how Brewer's body ended up in an abandoned building. Ward's statement was, according to his brief, simply a regurgitation of the facts as presented to him by the questioning officers. Following this recitation, Ward called the detectives back to the interrogation room and told them that everything he had said was a fabrication and lies. Ward alleged, as he did at trial, that he was in Florida when Brewer was killed.

At trial, the State produced several witnesses who saw Ward near or at the scene of the crime in the company of two other men. Ward testified that he left for Tallahassee on November 12, 1988. He drove 18 to 20 hours and arrived there around 6:00 a.m. on November 13, 1988. Ward specifically recalled this date because his son's birthday is November 13th. He also testified that he stayed in Tallahassee through November 24 when he left for Baltimore to retrieve the rest of his belongings since he decided to stay in Tallahassee. Ward produced alibi witnesses whose combined testimony placed him in Florida continuously from November 13, 1988 until November 20, 1988.

At the end of all the evidence, the State's Attorney offered Ward the chance to plead guilty to the charge of first degree murder in return for the State's agreement not to seek a disposition of life without parole and in return for the State's nol pros of the remaining 12 counts. Ward agreed. The trial court engaged in a lengthy colloquy with Ward to ascertain whether his *Alford* plea was made knowingly and voluntarily. The court accepted Ward's guilty plea to the murder charge and removed the case from the jury. The trial judge sentenced Ward to life imprisonment. This appeal followed.

## THE APPEAL

The State contends that a direct appeal is not available following a guilty plea, citing Md.Cts. & Jud.Proc.Code Ann. § 12–302(e), which specifies:

"Section 12–301 does not permit an appeal from a final judgment entered following a plea of guilty in a circuit court. Review of such a judgment shall be sought by application for leave to appeal."

██ The plea in this case was an *Alford* plea, a specialized type of guilty plea where the defendant, although pleading guilty, continues to deny his or her guilt, but enters the plea to avoid the threat of greater punishment. *North Carolina v. Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970); *Hudson v. State,* 286 Md. 569, 597–98, 409 A.2d 692 (1979), *cert. denied,* 449 U.S. 845, 101 S.Ct. 128, 66 L.Ed.2d 53 (1980). Hence, we must determine whether an *Alford* plea is the functional equivalent of a guilty plea under § 12–302(e). Although we have not previously articulated our holding that no direct appeal lies from an *Alford* plea, it is implicit from our remarks in *Pennington v. State,* 66 Md.App. 710, 505 A.2d 895 (1986), *aff'd,* 308 Md. 727, 521 A.2d 1216 (1987).

In *Pennington,* appellant entered an *Alford* plea to a charge of obstruction of justice. Appellant subsequently appealed, alleging that Maryland lacked jurisdiction to try her since every act attributed to her occurred in the District of Columbia. Before we addressed the merits of that case, we pointed out that a court may accept an *Alford* plea only after determining that the plea was voluntary and that there was a factual basis for the plea. While appealability was not raised as an issue in *Pennington,* we added:

"There is no right to review of a final judgment entered following a guilty plea in a circuit court; however, Md. Code Ann., Cts. & Jud.Proc., § 12–302(e) provides that review may be sought by application for leave to appeal. This court granted the appellant's application for leave to appeal on September 6, 1985. Thereupon the case was

transferred to the regular appeal docket of this court...."

*Pennington,* 66 Md.App. at 711 n. 1, 505 A.2d 895.

Implicit in this observation is that no direct appeal lies from an *Alford* plea. We now adopt that dicta in the form of a holding. We explain.

In Maryland, an accused may plead "not guilty, guilty, or, with the consent of the court, nolo contendere," or "not criminally responsible by reason of insanity." Rule 4–242(a). Rule 4–242 further provides:

"**(c) Plea of Guilty.**—The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea. *The court may accept the plea of guilty even though the defendant does not admit guilt.* Upon refusal to accept a plea of guilty, the court shall enter a plea of not guilty." (Emphasis added.)

Pursuant to Rule 4–242(c), we do not see how an *Alford* plea could be construed as anything short of a guilty plea.

In *Yanes v. State,* 52 Md.App. 150, 448 A.2d 359 (1982), we held that a plea of not guilty on an agreed statement of facts may be, and in *Yanes* was, the functional equivalent of a guilty plea. We stated:

"One must look to performance, and the performance in the case is that the appellant's not guilty on an agreed statement of facts was a judicial confession."

*Yanes,* 52 Md.App. at 155, 448 A.2d 359. We can find no logical distinction between a plea of not guilty on an agreed statement of facts and an *Alford* plea that would afford the person who made an *Alford* plea the right to appeal. In fact, we know of no authority stating that an *Alford* plea is

anything other than a modified guilty plea.[2]   Hence, we hold that an *Alford* plea is the functional equivalent of a guilty plea for purposes of § 12–302(e) and thus, judgments on *Alford* pleas are not subject to direct appeal to this Court.   Although we will dismiss the appeal, we will discuss the merits.[3]

## THE MERITS

■ The standard in determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."   *Alford,* 400 U.S. at 31, 91 S.Ct. at 164. This standard can be met

> "even though the accused denies his guilt, provided the prosecution demonstrates a strong factual basis for the plea and the accused clearly expresses a desire to enter it despite his professed belief in his innocence."

*Hudson,* 286 Md. at 596, 409 A.2d 692.   Hence, an *Alford* plea should not be refused by the trial court simply because the defendant maintains his or her innocence.   Sound policy dictates, however, that special care should be taken to make certain that the defendant's guilt is clear.

> "When a defendant seeks to plead guilty while protesting his innocence, the trial judge is confronted with a danger

---

**2.**   Courts in our sister jurisdictions that have considered similar questions agree.   *See State v. Zunino,* 133 Ariz. 117, 649 P.2d 996, 997 (App.1982) (an *Alford* plea is in effect a guilty plea and such a plea waives all nonjurisdictional defenses);   *State v. Haynes,* 8 Conn.App. 361, 513 A.2d 160, 161 (1986) (generally, an *Alford* plea operates as a waiver of all nonjurisdictional defects and bars constitutional challenges to pretrial proceedings);   *Corbett v. Commonwealth,* 717 S.W.2d 831, 833 (Ky.1986) (*Alford* plea obviated defendant's right to appeal); *State v. Bailey,* 53 Wash.App. 905, 771 P.2d 766, 767 (1989) (*Alford* plea operates as waiver of right to complain of preaccusatorial delay).

**3.**   The foreclosure of the route of direct appeal, however, does not mean that Ward is without legal recourse.   The Legislature has specifically authorized review of final judgments following guilty pleas in the circuit court by application for leave to appeal. § 12–302(e).   *See also Boone v. State,* 56 Md.App. 8, 9, 466 A.2d 66 (1983).

signal. It puts him on guard to be extremely careful that his duties ... are fully discharged. It highlights the importance of his obligation ... to assure that there is indeed a factual basis for the plea and that the defendant is clearly advised not only of the penalties to which he is exposed but of the fact that his plea waives any defenses to the charge. But after fully satisfying himself of the factual basis for the plea, and that the presentation of pertinent facts discloses no plain legal defense, the trial judge errs in insisting on trial merely because the defendant refuses to accompany his plea to lesser charges with an admission of the guilt indicated by the other evidence presented to the court."

*United States v. Gaskins,* 485 F.2d 1046, 1049 (D.C.Cir. 1973).

■ In the instant case, Ward concedes that his guilty plea "was made voluntarily and with an understanding of the nature of the charge and the consequences of the plea." He argues, however, that the court should not have accepted the plea as it was not supported by the facts. He grounds this argument upon this premise: that his trial was well along before the plea was offered and, during the evidentiary portion of his trial and prior to his decision to enter a plea of guilty, he offered alibi evidence in his own defense. He contends that the trial court should have taken the conflicting evidence into consideration and refused to accept the plea, notwithstanding that the prosecutor's factual recitation in support of the plea more than demonstrated his guilt of the crime of first degree murder. We disagree.

At the time Ward made the *Alford* plea, the State had already presented a strong case of first degree murder against him. Ward was seen leaving Leon's Bar with Brewer on the night of the crime. Later that evening, a clerk at a 7–Eleven store sold a gas can to a man he later identified from a picture lineup as Ward. The can sold to Ward was the same kind as the one found in the burned car. A positive identification was impossible since the can in the

car was charred by the fire. Prior to the burning of the car, Ward was identified as one of the three individuals around the car. The same witnesses later noticed the three men walking toward an abandoned building, the same building where Brewer's body was later found. Ward was also identified by two witnesses who saw him in the parking lot when the car was in flames. After he was located in Florida, Ward told the police that he had been in Leon's bar the night of the crime and left with two other men. He explained the events of that evening leading up to Brewer's murder, but identified the third man as the one who stabbed and killed Brewer. As the State pointed out, some of the things in Ward's statement were unknown to the police at the time of the statement and other things were known by the police, but had not been revealed to Ward, thus further indicating that Ward was present at the crime.

Confronted with the possibility of a sentence of life without parole, Ward accepted the State's offer to plead guilty. As the Supreme Court concluded in *Alford*,

> "[w]hen his plea is viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered, its validity cannot be seriously questioned. In view of the strong factual basis for the plea demonstrated by the State and [Ward's] clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitution error in accepting it."

*Alford*, 400 U.S. at 37–38, 91 S.Ct. at 167–68 (footnotes omitted) (citation omitted).

Moreover, Ward's position is similar to that presented by the defendant in *Offutt v. State*, 54 Md.App. 472, 458 A.2d 499 (1983). In *Offutt*, the defendant pled guilty, but on appeal challenged the factual basis for the plea. In rejecting Offutt's argument, we noted preliminarily that, while *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), constitutionally mandates that the record affirm-

atively reflect a factual basis for the plea, the appellate court "certainly need not review that basis in 'a light most favorable' to a defendant when our review of a contested case is limited to a 'clearly erroneous' test, Md.Rule [8–131(a)]." *Offutt*, 54 Md.App. at 474, 458 A.2d 499.

In noting that a factual basis is especially required in *Alford* pleas, we explained that a factual basis is necessary to assure the trial judge and the appellate court that a plea is knowingly and intelligently entered. *Offutt*, 54 Md.App. at 474, 458 A.2d 499. Accordingly, the factual basis "need be only such recitation as to protect a defendant who, while understanding the nature of the charge, may not realize that his conduct does not actually fall within the charge." *Offutt*, 54 Md.App. at 474–75, 458 A.2d 499 (citation omitted). Moreover, neither the trial court accepting the plea nor a court reviewing its factual adequacy is required to engage in inferential fact-finding. *Offutt*, 54 Md.App. at 475–76, 458 A.2d 499.

*Offutt* supports the proposition that, in the instant case, once the proceeding stopped in light of the plea, the court was *not* required to weigh the conflicting evidence elicited at trial or draw factual inferences favorable to the defense. Instead, the court need only ascertain whether those facts constituted the offense to which Ward was pleading guilty. We therefore conclude that since the State presented a strong factual basis for the plea, it was properly accepted by the trial court.

Ward's reliance on *Lee v. State*, 36 Md.App. 249, 373 A.2d 331 (1977), is misplaced. *Lee* held that the right to plead guilty is not a constitutional right and the refusal of the court to accept an *Alford* plea is not reversible error. In *Lee*, the defendant informed the judge that she preferred to stand trial before a jury. In the instant case, there is no question but that appellant knew he had presented a defense which, if believed, would exonerate him. Then, for whatever reason, after he presented his defense, he concluded that his sentencing exposure was less with the *Alford* plea and now has, for whatever reason, changed his

mind. We cannot find the trial judge was clearly erroneous in finding the facts supported the charges. Moreover, we do not hesitate to observe that, had the trial court rejected appellant's plea, we would undoubtedly be addressing that issue.

APPEAL DISMISSED.

COSTS TO BE PAID BY APPELLANT.