933 A.2d 887

**Kayode ABRAMS**

v.

**STATE of Maryland.**

**No. 2021 Sept. Term, 2006.**

Court of Special Appeals of Maryland.

Sept. 10, 2007.

Reconsideration Denied Nov. 6, 2007.

602

Rachel M. Kamins (Fred W. Bennett, on the brief), Greenbelt, for Appellant.

Mary Ann Ince (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, for Appellee.

Panel: DEBORAH S. EYLER, WOODWARD, and CHARLES E. MOYLAN, JR., (Retired, Specially Assigned), JJ.

WOODWARD, Judge.

■ This appeal arises out of an *Alford* plea[1] tendered in the Circuit Court for Prince George's County by appellant, Kayode Abrams, to three counts of uttering on June 16, 1994. The circuit court accepted appellant's plea and sentenced him to one year of imprisonment on each of the three counts, to run concurrently, and suspended the execution of the sentence in lieu of a period of two years' probation. On September 1, 2006, appellant filed a Petition for Writ of Error Coram Nobis, alleging, *inter alia,* that appellant's guilty plea was both unconstitutional and violative of Maryland Rule 4–242(c) because a factual basis for the plea had not been set forth on the record. After conducting a hearing on appellant's petition, the circuit court denied the same by order dated October 4, 2006.[2] Appellant filed a timely Notice of Appeal on October 26, 2006.

In this appeal, appellant claims that the trial court erred in denying his coram nobis petition because the record of his *Alford* plea contained neither a factual basis in support of the plea nor an adequate explanation of the elements of the crime. In response, the State raises a more fundamental issue, which was not presented to the trial court: Whether appellant is entitled to coram nobis relief when a probation before judgment under Article 27, section 641[3] was granted on all charges

---

1. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). An *Alford* plea is a "specialized type of guilty plea where the defendant, although pleading guilty, continues to deny his or her guilt, but enters the plea to avoid the threat of greater punishment." *Ward v. State,* 83 Md.App. 474, 478, 575 A.2d 771 (1990). In *Ward,* this Court held that an *Alford* plea was the functional equivalent of a guilty plea. *Id.* at 480, 575 A.2d 771. Accordingly, in this opinion we will use the terms "*Alford* plea" and "guilty plea" interchangeably.

2. The court also denied appellant's petition on the record at the conclusion of the coram nobis hearing.

3. Md.Code (1957, 1992 Repl.Vol.), Article 27 § 641 has been recodified, without substantive change, at Md.Code (2001), § 6–220 of the Criminal Procedure Article.

and appellant successfully completed the probation thereunder.

For the reasons set forth herein, we shall affirm the judgment of the circuit court.

## BACKGROUND

On March 29, 1994, an indictment was filed in the Circuit Court for Prince George's County, charging appellant with nine counts of uttering and one count of theft over $300. The statement of charges for these offenses, originally filed in the district court, was filed in the circuit court on April 6, 1994. On June 16, 1994, appellant withdrew his not guilty plea and entered an *Alford* plea to three counts of uttering. The remaining six counts of uttering and one count of theft over $300 were *nol prossed* by the State.

The following relevant part of the plea colloquy then ensued between the court and appellant.

THE COURT: [Defense counsel] tells me you want to plead guilty to three counts of uttering, which accuses you of offering a forged instrument to obtain some benefit you are not entitled to which carries a possible maximum of 10 years. It is a felony. Do you understand that?

[APPELLANT]: Yes, ma'am.

\* \* \*

THE COURT: [Appellant], did you get a copy of the statement of charges in your case where it sets out what it is you are supposed to have done?

[APPELLANT]: Yes.

THE COURT: Did you read it and understand it?

[APPELLANT]: Yes, ma'am.

THE COURT: Did you go over it with your attorney together with all possible defenses?

[APPELLANT]: Yes, ma'am.

THE COURT: Do you believe if your case went to trial that would be the State's evidence against you?

[APPELLANT]: Yes, ma'am.

THE COURT: Anything about the proceedings you don't understand?

[APPELLANT]: No, ma'am.

THE COURT: Anybody offer you anything other than this plea agreement or threaten you in order to cause you to enter this plea?

[APPELLANT]: No, ma'am.

THE COURT: Are you entering it freely and voluntarily?

[APPELLANT]: Yes, ma'am.

THE COURT: The [c]ourt finds the plea is freely, voluntarily, and knowingly, intelligently given. Find the factual basis set out in the statement of charges, takes judicial notice of the statement of charges, finds jurisdiction.

Accordingly, enter pleas under the provisions of *North Carolina v. Alford* to counts 7,8 and 9.

At no time did the court, the prosecutor, or defense counsel give an oral statement of facts in support of the plea. Defense counsel did not object to the plea colloquy or the court's acceptance of appellant's plea. Thereafter, the court sentenced appellant to one year for each of the three uttering charges, to run concurrently, and suspended all but one day, giving appellant credit for one day of time served. The court then imposed two years' probation. The court also ordered appellant to pay restitution of $530 to NationsBank. Appellant did not thereafter file a petition for leave to appeal, for a writ of habeas corpus, or for relief under the Maryland Post Conviction Procedure Act.

On June 23, 1994, appellant filed a Motion for Reconsideration of Sentence, which the court ordered to be held in abeyance. Almost two years later, on June 7, 1996, a hearing was held on the motion for reconsideration. At the conclusion of the hearing, the circuit court granted the motion and ordered that the entry of the judgments of conviction be stayed pursuant to Article 27, section 641. The court then placed appellant on unsupervised probation for a period of one day.

On June 8, 2005, appellant entered a guilty plea in the United States District Court for the Eastern District of Virginia (Alexandria Division) to the charge of conspiracy to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & 846. Appellant was sentenced to ten years' imprisonment on September 9, 2005. As a result of the guilty findings on the uttering charges, appellant was ineligible for a "safety valve" provision under the Federal Sentencing Guidelines,[4] which would have entitled him to a possible reduction of his sentence. In particular, but for the uttering offenses, appellant would have had only one "criminal history point" and would have been eligible under the Guidelines for a sentence of seventy to eighty-seven months, as opposed to the mandatory ten years that was imposed.

On September 1, 2006, appellant filed a Petition for Writ of Error Coram Nobis. In the petition, appellant averred that he "face[d] severe collateral consequences" from the uttering convictions and therefore a writ of error coram nobis vacating the convictions was proper. In particular, appellant challenged the June 16, 1994 convictions on the basis that, *inter alia,*[5] his guilty plea was not supported by a factual basis on the record during the plea hearing, which is required by Maryland Rule 4–242(c), as well as the Maryland and federal constitutions.

On September 22, 2006, a hearing on appellant's coram nobis petition was held in the Circuit Court for Prince George's County. At the start of the hearing, the State advised the court that the only issue in dispute was whether appellant's guilty plea was constitutional. The State (and the court) agreed that all other elements for a coram nobis petition were satisfied, including that appellant was facing "serious collateral consequence[s]." Appellant argued that, under Maryland Rule 4–242(c) and the Maryland and federal

---

4. U.S. Sentencing Guidelines Manual § 5C1.2 (2004).

5. Appellant also alleged ineffective assistance of counsel. This is not an issue on appeal and therefore we shall not address it.

constitutions, "a factual basis for the guilty plea [must] [ ] be spread upon the record in open court by either the [c]ourt, the prosecutor, or the defense attorney." In other words, a public, on-the-record recitation of the evidence against a defendant is *required* as part of a guilty plea hearing.

At the conclusion of the hearing, the court made its ruling from the bench, denying appellant's petition for coram nobis relief. The following relevant colloquy took place between defense counsel and the court:

[DEFENSE COUNSEL]: But there is evidence here that in the record, crystal clear, that neither the Judge nor the defense attorney, nor the State spread upon the record the contents of the statement of charges, which is required under Bradshaw versus Stumpf [545 U.S. 175, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005)], and I submit under 242, Maryland Rule 4–242 and the Parker [*v. State*, 160 Md.App. 672, 866 A.2d 885 (2005) ] case. That's all I have.

THE COURT: [Defense counsel], I'm going to find that there is *no* such requirement under either Maryland Rule 4–242(c), under the Maryland Declaration of Rights or Constitution, or under the United States Constitution. So I am going to deny your petition for writ of error coram nobis. And I find that the rule was complied with completely. That rule being once again Rule 4–242(c). That Judge Perry clearly explained the nature of the charge of uttering to the defendant.

Once again, referring to page 3, line 16, the Court: "She tells me you want to plead guilty to three counts of uttering, which accuses you of offering a forged instrument to obtain some benefit you are not entitled to, which carries a possible maximum of ten years." So the defendant was informed of the nature of the charges.

Judge Perry then went on [ ] [to] page 5, line 25, and then there's a 6 over on the right, and then it skips down to line 1: "Mr. Abrams, did you get a copy of the statement of charges in your case where it sets out what it is you are supposed to have done?"

I think that clearly refers to the statement of the charges filed February 16th, '94, which is present in the court file and not the indictment.

[DEFENSE COUNSEL]: Can we have on the record, since you're making findings, the date he pled guilty, so we can link that up?

THE COURT: Sure. And the defendant pled guilty in this case on June 16th, 1994.

[DEFENSE COUNSEL]: Four months later.

THE COURT: Four months later. "Mr. Abrams, did you get a copy of the statement of charges in your case where it sets out what you are supposed to have done?" I think that clearly refers to the Statement of Charges and not the indictment. The defendant responds, "Yes."

"The Court: Did you read it and understand it?

"The Defendant: Yes, ma'am.

"The Court: Do you believe if your case went to trial, that would be the State's evidence against you?

"The Defendant: Yes, ma'am."

The Statement of Charges clearly is rather lengthy and sets out a long recitation of what the defendant had done, even including the defendant's, I guess, confession to Sergeant Clint that he thought something was in fact wrong with the checks.

The Court then goes on [ ] [to] page 6, line 22, "The Court finds the plea is freely, voluntarily, and knowingly, and intelligently given. I find a factual basis as set out in the Statement[ ] of Charges." Takes judicial notice of the Statement of Charges. Finds jurisdiction and accordingly enters a plea.

Since I do not think it's required under Rule 4–242(c) that the factual basis must be spoken out loud and verbalized, that it is sufficient to refer to the [s]tatement of Charges. On that basis I'm going to deny the petition for error coram nobis.

It is from the aforementioned decision that appellant filed a timely appeal. Additional facts will be included as necessary for our discussion of the issues presented in this appeal.

## DISCUSSION

### I.

Preliminarily, the State contends that appellant is not entitled to coram nobis relief because such relief is available only to persons *convicted* of a crime, and appellant ultimately received a probation before judgment pursuant to Article 27, section 641, which is not a "conviction" under Maryland law. The State, however, concedes that this issue was not raised in or decided by the trial court and thus ordinarily would not be preserved for our review. *See* Md. Rule 8–131(a). Nevertheless, the State argues that "the circuit court was without jurisdiction to consider [appellant's] request for coram nobis relief in connection with a nonexistent conviction," and an issue of jurisdiction may be raised at any time under Rule 8–131(a).

Appellant responds by asserting that this issue is not "a question of the lower court's 'jurisdiction;' " rather, "it is simply a matter of [a]ppellant's eligibility to seek coram nobis relief." Thus, according to appellant, the issue has not been preserved for our review. Moreover, even if the issue is preserved, appellant claims that he is not disqualified from seeking coram nobis relief because "the probation before judgment that [a]ppellant received pursuant to the guilty plea in the present matter *does* count as a 'conviction' in the federal sentencing scheme." Indeed, because of the guilty finding on the uttering charges, appellant was treated as ineligible for a lesser sentence under the Federal Sentencing Guidelines.

We need not decide whether this issue is one of jurisdiction, which is not subject to waiver, or simply one of eligibility for coram nobis relief, which is waivable. We shall assume, without deciding, that the issue is jurisdictional and thus properly before us, because we agree with appellant's contention that, under the facts of this case, the probation before

judgment received by appellant constitutes a "conviction" for purposes of qualifying for relief under a coram nobis petition. We explain.

On June 7, 1996, the circuit court granted appellant's motion for reconsideration of the sentence on the uttering charges, stayed the entry of judgment pursuant to Article 27, section 641, and placed appellant on probation for one day.[6] Article 27, section 641 [7] stated, in pertinent part:

> (a) *Probation after plea or finding of guilt; terms and conditions; waiver of right to appeal from judgment of guilt.*—(1)(i)1. Whenever a person accused of a crime pleads guilty or nolo contendere or is found guilty of an offense, a court exercising criminal jurisdiction, if satisfied that the best interests of the person and the welfare of the people of the State would be served thereby, and with the written consent of the person after determination of guilt or acceptance of a nolo contendere plea, may stay the entering of judgment, defer further proceedings, and place the person on probation subject to reasonable terms and conditions as appropriate. . . .

> \* \* \*

> (c) *Fulfillment of terms of probation.*—Upon fulfillment of the terms and conditions of probation, the court shall discharge the person from probation. The discharge is final disposition of the matter. Discharge of a person under this section shall be without judgment of conviction and is not a

---

6. The docket entry from June 7, 1996 states:
RECONSIDERATION OF SENTENCE—GRANTED ORDERED BY JUDGE PERRY, TAPE 9646–203D THAT FINDING OF GUILTY IS HEREBY STRICKEN, SENTENCE OF; 6 16 96 IS SUSPENDED. FURTHER PROCEEDINGS; DEFERRED. ENTRY OF JUDGMENT IS STAYED PURSUANT; TO ARTICLE 27, SECTION 641. THE DEFENDANT IS; PLACED ON UNSUPERVISED PROBATION FOR A PERIOD OF; 1 DAY.; ANY BENCH WARRANTS RECALLED. We believe that the date of June 16, 1996 in the docket entry was in error. Based on the record before us, the date should be June 16, 1994.

7. Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 641.

conviction for purposes of any disqualification or disability imposed by law because of conviction of crime.

In *Myers v. State*, 303 Md. 639, 640, 496 A.2d 312 (1985), the Court of Appeals was called upon to construe section 9–104 of the Courts and Judicial Proceedings Article,[8] which provides that "[a] person convicted of perjury may not testify," in light of Article 27, section 641. The question before the Court was: "[W]hether a person who is found guilty of perjury, but who is given probation before judgment is competent to testify." *Id.* The appellant in *Myers* had moved to strike the testimony of his wife on the ground that she was incompetent to testify because she had previously been found guilty of perjury. *Id.* at 640–41, 496 A.2d 312. The circuit court denied the appellant's motion because, although his wife had been found guilty of perjury, she had received a probation before judgment and therefore had not been convicted of perjury pursuant to Maryland law. *Id.* at 641, 496 A.2d 312.

In establishing the legal framework for its analysis, the Court observed:

At common law a person was not "convicted" of a crime until the court entered a judgment on the finding of guilt. **In today's usage, however, the meaning of "convicted" and "conviction" turns upon the context and purpose with which those terms are used.** For example, in its general and popular sense "conviction" means the establishment of guilt prior to, and independent of, the judgment of the court. By contrast, in its legal and technical sense this term means the final judgment and sentence rendered by a court pursuant to a verdict or plea of guilty, and it is frequently used to denote the judgment or sentence.

*Id.* 642–43, 496 A.2d 312 (emphasis added) (citations omitted).

The Court then addressed the "context" of the case before it, namely section 9–104, which declares that persons convicted

8. Md.Code (1974, 2006 Repl.Vol.), § 9–104 of the Courts and Judicial Proceedings Article. Notably, the Court was called upon to construe the 1984 version of section 9–104, which contains the same wording as the current section.

of perjury are incompetent to testify. *Id.* at 642, 496 A.2d 312. The Court stated that "[w]here, as here, the statute under consideration imposes a legal disability, courts have defined 'conviction' in its legal and technical sense." *Id.* at 643, 496 A.2d 312. Under Maryland case law, the Court explained, the "legal and technical sense" "equated a 'conviction' with the judgment of the court on the verdict and not with the mere determination of guilt." *Id.* at 643, 645, 496 A.2d 312.

The Court concluded:

> Accordingly, **unless the context in which the word is used indicates otherwise,** a "conviction" is the final judgment and sentence rendered by a court pursuant to a verdict or plea of guilty. Thus, as we see it, a person is not "convicted" of an offense until the court enters a judgment upon the verdict of guilty.

*Id.* at 645, 496 A.2d 312 (emphasis added).

In later cases, whether a probation before judgment constituted a "conviction" again depended on the context and purpose of the use of the term "conviction." In *Shilling v. State,* 320 Md. 288, 290, 577 A.2d 83 (1990), the appellant was found guilty of driving while intoxicated in violation of Md.Code (1957, 1987 Repl.Vol., 1989 Cum.Supp.), § 21–902(a) of the Transportation Article ("Trans. Art.") [9] and given a probation before judgment. This disposition was granted by the trial court notwithstanding the court's awareness that, within the previous five years, the appellant had been found guilty of a violation of Trans. Art. § 21–902(b) [10] and received a probation before judgment. *Id.* The State appealed, claiming that the appellant was a subsequent offender under Md.Code (1957,

---

**9.** Section 21–902(a) has since been renamed as "Driving while under the influence of alcohol," but has retained the same legal requirements and penalties. Md.Code (1977, 2006 Repl. Vol), § 21–902(a)(1) of the Transportation Article.

**10.** Section 21–902(b) has since been renamed as "Driving while impaired by alcohol" but has retained the same legal requirements and penalties. Md.Code (1977, 2006 Repl. Vol), § 21–902(b)(1) of the Transportation Article.

1987 Repl.Vol., 1989 Cum.Supp.) Article 27, § 641(a)(2) and thus could not be granted a second probation before judgment. *Id.*

One of the arguments made by the appellant on appeal was that he was eligible for a probation before judgment because the State failed to give him prior notice under Maryland Rule 4–245, which requires such notice to one who, because of a prior conviction, is subject to an additional or mandatory statutory punishment. *Id.* at 296, 577 A.2d 83. This Court disagreed, holding that, because a probation before judgment was not a prior *conviction,* the State did not have to give the required notice. *State v. Shilling,* 75 Md.App. 233, 239, 540 A.2d 1184 (1988). The Court of Appeals granted certiorari to address the issue, among others, of whether a probation before judgment for a violation of Trans. Art. § 21–902 was a "prior conviction" under Maryland Rule 4–245. *Shilling,* 320 Md. at 296, 577 A.2d 83.

The Court of Appeals began its analysis by referring to *Myers,* wherein it was "pointed out that the word 'conviction' has different meanings and may vary according to the context and purpose of the statute in which it appears. *We noted that probation before judgment was a conviction in certain instances, but not a conviction in others."* *Id.* (emphasis added).

The Court found that, under the express language of Article 27 § 641(a)(2), the appellant's first probation before judgment made him a subsequent offender for any violation of Trans. Art. § 21–902 within the next five years and ineligible for a probation before judgment for such subsequent offense. *Id.* at 293, 577 A.2d 83. The purpose of Rule 4–245, according to the Court, is to inform a defendant of the State's intention to seek enhanced punishment and to provide an opportunity to challenge the State's allegation of a prior conviction or violation of the statute. *Id.* at 297, 577 A.2d 83. Given the appellant's status as a subsequent offender and the purpose of Rule 4–245, the Court concluded that the appellant's probation before judgment was a "prior conviction" under Rule 4–245

and thus the State was required to give notice before the appellant could be sentenced as a subsequent offender. *Id.*

On the other hand, in *Gakaba v. State,* 84 Md.App. 154, 155, 578 A.2d 299, *cert. denied,* 321 Md. 385, 582 A.2d 1255 (1990), this Court held that a probation before judgment did not qualify as a "conviction" as that term is used under the Maryland Post Conviction Procedure Act. We reasoned:

> Our holding is consistent with the probation before judgment statute. That statute provides in Art. 27, § 641(a)(1)(i) that probation before judgment may not be entered unless the defendant consents in writing to the stay of judgment. Then, § 641(a)(3) goes on to provide that by consenting to the stay, the defendant "waives the right to appeal from the judgment of guilt by the court at any time." Because a defendant may not seek a direct appeal from a probation before judgment, it seems logical that he should also be forbidden from collaterally attacking a probation before judgment under the Post Conviction Act.

*Id.* at 156, 578 A.2d 299.

In the case *sub judice,* the term "conviction" is used in the context, and according to the purpose, of a petition for writ of error coram nobis. The seminal case in Maryland on the coram nobis writ is *Skok v. State,* 361 Md. 52, 760 A.2d 647 (2000). There, the Court of Appeals conducted an in-depth analysis of the history of the writ of error coram nobis and, following the reasoning of the Supreme Court in *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), expanded the scope of coram nobis relief in Maryland.

The *Skok* Court explained that the original purpose behind the writ of error coram nobis was a narrow one; it served to " 'bring before the court facts which were not brought into issue at the trial of the case, and which were material to the validity and regularity of the proceedings, and which, if known by the court, would have prevented the judgment.' "[11] 361

---

11. The *Skok* Court explained that coram nobis

Md. at 68, 760 A.2d 647 (quoting *Madison v. State,* 205 Md. 425, 432, 109 A.2d 96 (1954)). By " 'the decided weight of authority, [the writ was] not broad enough to reach every case in which there has been an erroneous or unjust judgment, on the sole ground that no other remedy exists[.]' " *Id.* at 69, 760 A.2d 647 (quoting *Keane v. State,* 164 Md. 685, 692, 166 A. 410 (1933)).

The Court, however, observed that the "[m]ore recent cases and sound public policy warrant a somewhat broader scope of coram nobis." *Id.* at 70, 760 A.2d 647. The *Skok* Court identified *Morgan* as the leading case concerning the nature and scope of a coram nobis proceeding, wherein the Supreme Court held that "coram nobis should be available to raise 'fundamental' errors in attempting to show that a criminal conviction was invalid under the circumstances where no other remedy is presently available and where there were sound reasons for the failure to seek relief earlier." 361 Md. at 72–73, 760 A.2d 647.

In adopting the broadened scope of coram nobis relief announced in *Morgan,* the *Skok* Court opined:

**Along with the vast majority of appellate courts which have considered the matter, we believe that the scope of coram nobis, as delineated in *United States v. Morgan,* is justified by contemporary conditions and public policy.** Very often in a criminal case, because of a relatively light sanction imposed or for some other reason, a defendant is willing to forego an appeal even if errors of a constitutional or fundamental nature may have occurred. Then, when the defendant later learns of a substantial collateral consequence of the conviction, it may be too late to appeal, and, if the defendant is not incarcerated or on parole or probation,

will not lie (1) to correct an issue of fact which has been adjudicated, even though wrongly determined, or (2) to determine whether any witnesses testified falsely at the trial, or (3) to present newly discovered evidence, or (4) to strike out a conviction on the ground that the prosecuting witness was mistaken in his identification of the accused as the person who committed the crime.
361 Md. at 67–68, 760 A.2d 647 (quoting *Madison v. State,* 205 Md. 425, 432, 109 A.2d 96 (1954)).

he or she will not be able to challenge the conviction by a petition for a writ of habeas corpus or a petition under the Post Conviction Procedure Act.

Moreover, serious collateral consequences of criminal convictions have become much more frequent in recent years. The past few decades have seen a proliferation of recidivist statutes throughout the country. In addition, apparently because of recent changes in federal immigration laws, regulations, and administration, there has been a plethora of deportation proceedings against non-citizens based on relatively minor criminal convictions.

\* \* \*

**In light of these serious collateral consequences, there should be a remedy for a convicted person who is not incarcerated and not on parole or probation, who is suddenly faced with a significant collateral consequence of his or her conviction, and who can legitimately challenge the conviction on constitutional or fundamental grounds.** Such person should be able to file a motion for coram nobis relief regardless of whether the alleged infirmity in the conviction is considered an error of fact or an error of law.

*Id.* at 77–78, 760 A.2d 647 (emphasis added).

In the case *sub judice,* the State argues that, because a probation before judgment is not a conviction under Maryland law, appellant is not entitled to coram nobis relief. The State points to the language of the *Skok* opinion, wherein the Court of Appeals stated that coram nobis relief should be available for "a *convicted* person who is not incarcerated and not on parole or probation, who is suddenly faced with significant collateral consequences of his or her *conviction,* and can legitimately challenge the *conviction* on constitutional or fundamental grounds." *Id.* at 78, 760 A.2d 647 (emphasis added). We disagree.

 Under *Myers* and its progeny, whether a probation before judgment is a "conviction" depends upon the context and purpose for which that term is used. In the context of a coram nobis petition, the term "conviction" or "convicted" is

used to identify a person eligible for relief under the petition as one who, *inter alia*, is facing significant collateral consequences because of having been found guilty of a criminal offense. It is essentially irrelevant whether the disposition on the guilty finding is a judgment of conviction, *i.e.*, a sentence, or a stay of entry of a judgment, *i.e.*, a probation before judgment. The critical issue is whether the finding of guilt did or will in fact cause significant collateral consequences to the person petitioning for coram nobis relief. Here, appellant's probation before judgment was treated as a "conviction" for purposes of the Federal Sentencing Guidelines and, as a result, appellant was subject to a mandatory penalty of ten years' imprisonment.

More importantly, the Court of Appeals made clear in *Skok* that the overriding public policy behind coram nobis relief in Maryland is to afford a remedy to a person who is faced with significant collateral consequences of his or her "conviction." 361 Md. at 77, 760 A.2d 647. These collateral consequences are often imposed by jurisdictions other than Maryland, under whose laws a Maryland probation before judgment is treated in the same manner as a "conviction" under their laws. Under these circumstances, to hold that a probation before judgment is not a "conviction" would be contrary to the clear public policy underlying coram nobis relief.

For these reasons, we hold that, where a probation before judgment subjects a person to significant collateral consequences, such probation before judgment constitutes a "conviction" for purposes of coram nobis relief. Accordingly, in the case *sub judice*, appellant's probation before judgment qualifies as a "conviction" in a coram nobis proceeding, because his probation before judgment prevented him from receiving a sentence less than a mandatory ten years under the Federal Sentencing Guidelines.

## II.

In *Harris v. State*, 303 Md. 685, 697–98, 496 A.2d 1074 (1985), the Court of Appeals set forth the appellate standard of review for a constitutional challenge to a guilty plea:

When a claim is based upon a violation of a constitutional right it is our obligation to make an independent constitutional appraisal from the entire record. But this Court is not a finder of facts; we do not judge the credibility of the witnesses nor do we initially weigh the evidence to determine the facts underlying the constitutional claim. It is the function of the trial court to ascertain the circumstances on which the constitutional claim is based. So, in making our independent appraisal, we accept the findings of the trial judge as to what are the underlying facts unless he is clearly in error. We then re-weigh the facts as accepted in order to determine the ultimate mixed question of law and fact, namely, was there a violation of a constitutional right as claimed.

(Citations omitted); *accord State v. Gutierrez,* 153 Md.App. 462, 470, 837 A.2d 238 (2003).

Also relevant to our discussion of the instant case is Maryland Rule 4–242(c), which governs the entry of guilty pleas. It states:

**Plea of guilty.** The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea. In addition, before accepting the plea, the court shall comply with section (e) of this Rule. The court may accept the plea of guilty even though the defendant does not admit guilt. Upon refusal to accept a plea of guilty, the court shall enter a plea of not guilty.[12]

### A.

Appellant assigns error to his guilty plea on the basis that the trial court's explanation of the elements of the crime was

---

12. Subsection (e) addresses deportation as a potential collateral consequence for a defendant who is not a United States citizen entering a plea of guilty or nolo contendere.

"woefully inadequate." Appellant maintains that, pursuant to Rule 2–424(c) and Maryland case law, he was entitled to be advised of "the elements of the crime of uttering—among which is the specific intent to defraud." Because appellant was not adequately informed of this "critical element," appellant contends that "there [was] nothing on the record to show that [he] actually understood the nature of the offense when the plea was accepted by the court, [and thus] the plea was neither voluntary nor intelligent."

In response, the State argues that under Maryland law, there is no particular litany required to establish a voluntary and intelligent plea. Rather, "the standard to be applied is whether, under the totality of the circumstances, the plea was knowing and intelligent." The State points out that as part of appellant's guilty plea, appellant informed the court that he had received a copy of the statement of the charges, that he had read the statement of charges and understood it, and that he had gone over the statement of charges with his attorney, along with all possible defenses. Further, according to the State, the court expressly advised appellant of the definition of the crime of uttering. The State concludes that, under the totality of these circumstances, appellant's plea was voluntarily and knowingly entered.

At appellant's guilty plea hearing, the court inquired of appellant: "[Your counsel] tells me you want to plead guilty to three counts of uttering, which accuses you of offering a forged instrument to obtain some benefit you are not entitled to which carries a possible maximum of 10 years. It is a felony. Do you understand that?", to which appellant replied: "Yes ma'am." The plea colloquy then revealed that appellant had received a copy of the statement of charges, had read and understood it, and had gone over it with his attorney, including all defenses. Appellant also believed that, if his case went to trial, the statement of charges would be the State's evidence against him. Finally, to the court's question, "Anything about the proceedings you don't understand?," appellant replied, "No ma'am."

In *State v. Priet,* 289 Md. 267, 268–69, 424 A.2d 349 (1981), the appellees claimed that their guilty pleas violated "that part of Maryland Rule 731 c which requires questioning of the defendant on the record to determine that the plea is voluntarily entered, 'with understanding of the nature of the charge.'" [13] In *Priet,* the record indicated that each appellee "was questioned at length concerning the voluntariness *vel non* of his plea, was informed of the penalty for the offense, and of the constitutional and other rights that would be waived by the entry of a guilty plea." *Id.* at 290, 424 A.2d 349. Moreover, each appellee "was represented by counsel with whom he acknowledged discussing the case and his guilty plea." *Id.* However, as to each appellee, the trial court did not discuss the nature of the charge with appellee and the record did not "particularize the precise basis of the [appellee's] claimed knowledge that he understood the nature of the offense." *Id.*

In upholding the validity of the appellees' guilty pleas, the Court of Appeals stated: "Consistent with the principles espoused in the majority of those state and federal cases, and with the rationale underlying our decision in *Davis,* Rule 731 c does not impose any ritualistic or fixed procedure to guide the trial judge in determining whether a guilty plea is voluntarily and intelligently entered." *Id.* at 287–88, 424 A.2d 349. Rather, the plea is to be viewed under the "'totality of the circumstances as reflected in the entire record.'" *Id.* at 276, 424 A.2d 349 (quoting *Davis v. State,* 278 Md. 103, 109, 361 A.2d 113 (1976)).

Further, speaking specifically to whether a detailed recitation by the court of the elements the crime is necessary for a guilty plea to be voluntarily and intelligently entered, the Court definitively stated:

The rule [731 c] does not require that the precise legal elements comprising the offense be communicated to the defendant as a prerequisite to the valid acceptance of his

---

**13.** In 1984, Rule 731 c was recodified without substantive change as Md. Rule 4–242(c).

guilty plea. Rather, by its express terms, the rule man-
dates that a guilty plea not be accepted unless it is deter-
mined by the court, after questioning of the defendant on
the record, that the accused understands the "nature" of the
charge. This, of course, is an essential requirement of the
rule and must be applied in a practical and realistic manner.
It simply contemplates that the court will explain to the
accused, in understandable terms, the nature of the offense
to afford him a basic understanding of its essential sub-
stance, rather than of the specific legal components of the
offense to which the plea is tendered.

*Id.* at 288, 424 A.2d 349.

On this issue, the Court of Appeals also noted

the observation made by the Supreme Court in *Henderson
[v. Morgan,* 426 U.S. 637, 647, 96 S.Ct. 2253, 49 L.Ed.2d 108
(1976) ], that unless the contrary clearly appears from the
record (as was true in *Henderson),* "it may be appropriate
to presume that in most cases defense counsel routinely
explain the nature of the offense in sufficient detail to give
the accused notice of what he is being asked to admit." . . .
The test, as we have indicated, is whether, considering the
record as a whole, the trial judge could fairly determine that
the defendant understood the nature of the charge to which
he pleaded guilty.

*Id.* at 290–91, 424 A.2d 349.

In the recent case of *Bradshaw v. Stumpf,* 545 U.S. 175,
182, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005), the Supreme
Court was called upon to review, *inter alia,* whether Stumpf's
plea of guilty to aggravated murder was invalid because he
was not made aware of the specific intent element of the
charge. The Court began its analysis by stating that
"Stumpf's guilty plea would indeed be invalid if he had not
been aware of the nature of the charges against him, including
the elements of the aggravated murder charge to which he
pleaded guilty." *Id.* at 182–83, 125 S.Ct. 2398. The Court
then cited to *Henderson* for the proposition that "[w]here a
defendant pleads guilty to a crime without having been in-

formed of the crime's elements, this standard [the voluntary, knowingly, and intelligent standard] is not met and the plea is invalid." *Id.* at 183, 125 S.Ct. 2398.

The *Bradshaw* Court, however, held that the lower court had erred in finding that the appellant had not been properly informed of the "specific intent element" of aggravated murder before pleading guilty. *Id.* at 182–83, 125 S.Ct. 2398. The Court reasoned:

> In [appellant]'s plea hearing, his attorneys represented on the record that they had explained to their client the elements of the aggravated murder charge; [appellant] himself then confirmed that this representation was true. While the court taking a defendant's plea is responsible for ensuring a record adequate for any review that may be later sought, **we have never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel.** *Cf. Henderson,* [426 U.S. at 647, 96 S.Ct. 2253] (granting relief to a defendant unaware of the elements of his crime, but distinguishing that case from others where "the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused"). **Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty.**

*Id.* at 183, 125 S.Ct. 2398 (emphasis added) (internal citation and quotations omitted).

■ It appears, as appellant argues, that the *Bradshaw* opinion has effected a significant restriction to the principles enunciated by the Court of Appeals in *Priet.* No longer can a trial judge rely on the presumption that defense counsel has

sufficiently explained to the defendant the nature of the offense to which he or she is entering a guilty plea. Instead, the trial judge must either (1) explain to the defendant on the record the nature of the charge and the elements of the crime, or (2) obtain on the record a representation by defense counsel that the defendant has been "properly informed of the nature and elements of the charge to which he [or she] is pleading guilty." *Id.*[14]

■ In the case *sub judice,* appellant contends that he was never advised of the elements of the crime of uttering. It is clear from the record that the trial judge never secured a representation from defense counsel that appellant had been properly informed of the elements of the crime.[15] Nonetheless, we are satisfied that, prior to accepting appellant's guilty plea, the trial judge correctly explained to appellant all of the elements of the crime of uttering.

As part of the guilty plea colloquy, the court asked appellant: "[Your counsel] tells me *you want to plead guilty to*

---

14. The Supreme Court did not address the question of whether a representation *by the defendant* on the record that defense counsel advised him or her of the nature and elements of the crime will pass constitutional muster. Since *Bradshaw,* lower courts have been divided on this issue. *Compare Jones v. State,* 936 So.2d 993, 996–97 (Miss.Ct. App.2006) (holding a guilty plea invalid where the defendant admitted in writing that his attorney had explained to him the nature and elements of the charge to which he was pleading guilty, but the court never asked defense counsel at the plea hearing whether he had explained the elements to the defendant) *with State v. Reid,* 277 Conn. 764, 894 A.2d 963, 976 (2006) (upholding a guilty plea because the defendant advised the court at the plea hearing that defense counsel had gone over the law with the defendant as it related to the subject offense).

15. In the plea colloquy, however, appellant advised the trial court that he had received, read, and understood the statement of charges, and that he had, in fact, discussed the statement of charges with his attorney, including all possible defenses. Even if the trial court could rely on a defendant's representation, instead of defense counsel's, it is unclear that a "discussion of the statement of charges with defense counsel" is sufficient under *Bradshaw* to show *on the record* that counsel properly advised the defendant of the elements of the charge to which he or she was pleading guilty.

*three counts of uttering, which accuses you of offering a forged instrument to obtain some benefit you are not entitled to* which carries a possible maximum of 10 years. It is a felony. Do you understand that?". (Emphasis added). Appellant responded: "Yes ma'am."

The Maryland Criminal Pattern Jury Instructions, which embody Maryland statutory and common law, state that, "[i]n order to convict the defendant of uttering, the State must prove:"

(1) that the defendant presented or passed or attempted to pass a forged writing as genuine;

(2) that the defendant knew that the writing was forged; and

(3) that the defendant presented or passed the writing with the intent to cheat or defraud.

MPJI–Cr 4:14.2 (2006); *see Levy v. State,* 225 Md. 201, 206, 170 A.2d 216 (1961).

In our view, the court's definition of uttering included all of the elements of uttering. The phrase "offering a forged instrument to obtain some benefit you are not entitled to" clearly satisfies the first element of the jury instructions— attempting to pass a forged writing as genuine. It also covers the second element, because if a person offers a forged instrument *in order to* obtain a benefit to which he is not entitled, it can be inferred that such person has knowledge of the instrument's falsity. Finally, offering a forged instrument in order to obtain some benefit that one is not otherwise entitled to implies a specific intent to defraud the person from whom the benefit is sought, thereby fulfilling the third element.

The trial court's definition of uttering, combined with confirmation from appellant that he had gone over the statement of charges and all possible defenses with his attorney, leads this Court to conclude that appellant understood the nature and elements of the charges to which he was pleading guilty.

## B.

Appellant also argues, relying principally on this Court's decision in *Parren v. State,* 89 Md.App. 645, 599 A.2d 828 (1991), that the circuit court "erred in denying coram nobis relief to [a]ppellant on the basis that his *Alford* plea[ ] w[as] entered without a factual basis being set forth on the record," and thus appellant's guilty plea was "neither knowing nor voluntary." Specifically, appellant contends that, during his guilty plea, "[a]ll the trial court did in this case was establish that [a]ppellant had read, at some point in time, the Statement of Charges and that he understood it." According to appellant, "it was not sufficient for the trial court to take 'judicial notice' of a statement of charges to satisfy the factual basis requirement of Rule 4–242(c)," and therefore appellant's plea was infirm. In sum, appellant claims error in the court's failure to require an oral recitation, on the record, of the underlying facts constituting the offense to which appellant pled guilty.

■ The State responds that appellant's guilty plea contained a sufficient factual basis on the record and therefore the trial court did not err. In particular, the State argues:

Based upon the statement of charges contained in the record, and [appellant's] acknowledgment at the plea hearing that he had read and understood the statement of charges against him and had discussed those charges and any possible defenses to the charges with his attorney, the coram nobis court also correctly concluded that the hearing court confirmed that there was a factual basis for [appellant's] *Alford* plea and correctly held that [appellant's] plea was knowingly and voluntarily entered.[16]

---

16. The State also sets forth two additional arguments as to why the court did not err in denying appellant's coram nobis petition. We shall address both arguments here.

First, the State claims that the court properly denied appellant's coram nobis petition because "[appellant's] federal convictions and sentence were unrelated to his uttering convictions and were solely the direct result of his own subsequent criminal conduct," and therefore

On this issue, we again set forth the following relevant colloquy between the circuit court and appellant at the guilty plea hearing:

> THE COURT: [Appellant], did you get a copy of the statement of charges in your case where it sets out what it is you are supposed to have done?
>
> [APPELLANT]: Yes.
>
> THE COURT: Did you read it and understand it?
>
> [APPELLANT]: Yes, ma'am.
>
> THE COURT: Did you go over it with your attorney together with all possible defenses?
>
> [APPELLANT]: Yes, ma'am.
>
> THE COURT: Do you believe if your case went to trial that would be the State's evidence against you?
>
> [APPELLANT]: Yes, ma'am.
>
> THE COURT: Anything about the proceedings you don't understand?
>
> [APPELLANT]: No, ma'am.
>
> THE COURT: Anybody offer you anything other than this plea agreement or threaten you in order to cause you to enter this plea?
>
> [APPELLANT]: No, ma'am.
>
> THE COURT: Are you entering it freely and voluntarily?
>
> [APPELLANT]: Yes, ma'am.

---

appellant was not facing significant collateral consequences. We find no merit in this contention because the State *expressly conceded* on the record at the coram nobis hearing that appellant was, in fact, facing significant collateral consequences.

Second, the State argues that the court was correct in denying appellant coram nobis relief because appellant waived his right to seek such relief when he failed to challenge his 1994 convictions prior to the order of June 7, 1996. This is the first time that the State has argued the issue of waiver. The State *did not* argue waiver at appellant's coram nobis hearing, instead responding only to the merits of appellant's claim; that is, whether appellant's plea contained a sufficient factual basis on the record. Ordinarily, an argument not raised below is not preserved for appellate review. Maryland Rule 8–131(a). *See Conyers v. State,* 367 Md. 571, 593–94, 790 A.2d 15 (2002). Thus we decline to address the State's contention.

THE COURT: The Court finds the plea is freely, voluntarily, and knowingly, intelligently given. **Find the factual basis set out in the statement of charges, takes judicial notice of the statement of charges, finds jurisdiction.**

Accordingly, enter pleas under the provisions of *North Carolina v. Alford* to counts 7, 8 and 9.

(Emphasis added).

Appellant relies heavily on our opinion in *Parren* to support his argument that, because there was no "factual basis [ ] set forth on the record," his guilty plea was neither knowing nor voluntary, and the court erred in denying him coram nobis relief. We find the facts of *Parren* distinct from the instant case and conclude that there was a sufficient factual basis on the record to support appellant's guilty plea. We explain.

In *Parren*, this Court consolidated the appeals of two appellants, Parren and Brown, who had raised the same issue—whether, under Maryland Rule 4-242(c), their guilty pleas were not knowing and voluntary because of an inadequate factual basis on the record. 89 Md.App. at 646–47, 599 A.2d 828. We reversed the trial court's denials of appellants' post conviction relief based on what we determined was an inadequate factual basis set forth on the record in each case. *Id.* at 647, 599 A.2d 828.

We discussed the plea of Parren first:

As to the guilty plea proceeding involving [ ] Parren, the following is the **full extent** of the record in terms of factual basis:

The Court: I have the court file which contains the complete transcript of the prior proceedings, all the discovery proceedings, all police reports, all offense reports, statement of charges, lab report, medical evaluation, and testimony of prior proceedings, sent back to this court from the Court of Special Appeals, all these items being the statement of facts. Are there any additions or corrections from either side?

Mr. Eaton: No additions or corrections.

The Court: Mr. Parren, the court finds a factual basis for the guilty plea, and that the plea is free and voluntary.

*Id.* at 648–49, 599 A.2d 828 (emphasis added) (internal quotations omitted).

We then opined:

There was in that no recitation, even in broad outline, of what the underlying facts were. **There was, therefore, no inquiry into whether Parren acknowledged the conduct that constituted the charges against him. This is an indispensable component of the voluntariness and knowledgeability requirements for a valid plea:**

"The factual basis inquiry serves a dual purpose. First, an examination of the law and the acts which the defendant admits he committed protect[s] a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.... Second, the court's exposure of the defendant's state of mind on the record not only facilitates [the judge's] determination of a guilty plea's voluntariness, but ... also facilitates that determination in any subsequent post-conviction proceeding based upon a claim that the plea was involuntary."

*Id.* at 649, 599 A.2d 828 (emphasis added) (alteration in original) (internal quotations omitted) (quoting *State v. Thornton*, 73 Md.App. 247, 255, 533 A.2d 951 (1987)).

Next, we set forth the transcript of Brown's guilty plea:

The factual basis for James Brown's guilty plea was, if anything, even less substantial:

The Court: The court has the court file, which contains the complete copy of all the statement of charges, all the discovery material. Those items being the statement of facts, are there any additions or corrections from either side?

[PROSECUTOR]: No, Your Honor.

[DEFENSE COUNSEL]: The defense presents none, Your Honor.

The Court: Mr. Brown, the court finds there is a factual basis for your guilty pleas, that your guilty pleas are your free and voluntary act.

*Id.* at 649–50, 599 A.2d 828 (internal quotations omitted).

In concluding that the records of the appellants' guilty pleas lacked an adequate factual basis and were therefore neither knowing nor voluntary, we held: "There must be some statement as to the underlying facts which constitute the offense and which the defendant moreover admits." *Id.* at 650, 599 A.2d 828.

Thus the holding of *Parren* is that there must be some statement as to the underlying facts to which the defendant admits and from which the court can determine whether the admitted facts constitute the offense that is the subject of the plea. *Id.* at 650–51, 599 A.2d 828. In the usual case, the statement is made orally by the prosecutor on the record at the plea hearing. We believe, however, that failure to follow this procedure is not, in itself, reversible error if the court can still determine on the record that a factual basis supports the plea. *See* Md. Rule 4–242(c).

For example, in *U.S. v. DeFusco,* 949 F.2d 114, 120 (4th Cir.1991), *cert. denied,* 503 U.S. 997, 112 S.Ct. 1703, 118 L.Ed.2d 412 (1992), the defendant

provided the court with a signed statement of facts which he admitted on the record was an accurate representation of what happened. The statement of facts, as well as the plea agreement, sets forth each element of the offense and the facts to support each of the two counts to which [the defendant] pled guilty.

The United States Court of Appeals for the Fourth Circuit held that the underlying factual basis for the plea need not be read into the record, stating that "Rule 11 does not require the judge to establish *through colloquy* that a factual basis exists for the plea. The court may conclude that a factual basis exists from anything that appears on the record." *Id.*

The Court concluded that "[i]t is certainly reasonable for the court to find an adequate factual basis from the statement of facts alone." *Id.*[17]

■ Therefore, we conclude that a factual basis for a guilty plea is constitutionally valid where the statement of the underlying facts is (1) in writing in the record before the trial court at the plea hearing, (2) is known and admitted to on the record by the defendant,[18] and (3) is determined by the trial court to constitute the offense to which the defendant is pleading guilty.[19]

■ In the case *sub judice*, at the plea hearing, the trial court had before it the court file for appellant's case, which contained the statement of charges for the three uttering charges to which appellant was pleading guilty. The statement of charges set forth in detail the facts underlying the uttering charges.[20] The court asked appellant whether he

---

17. This Court has acknowledged "the close relationship between and common provenance of [ ] Maryland Rule [4–242] and Federal Rule of Criminal Procedure 11." *Parren,* 89 Md.App. at 647, 599 A.2d 828.

18. In an *Alford* plea, the defendant need only admit, as appellant did in the instant case, that the facts underlying the offense would constitute the State's evidence against him or her. *See Alford,* 400 U.S. at 37, 91 S.Ct. 160.

19. We hasten to add, however, that the usual procedure of having the statement of the underlying facts orally placed on the record at the plea hearing is the preferred one to be followed by trial courts, rather than the procedure that we hold here to survive constitutional challenge.

20. The statement of charges set forth the following relevant facts:

2–16–94, [Appellant] entered the Educational Systems Employees Federal Credit Union located [at] 3950 48th Street, Bladensburg, [P]rince George's County, Maryland, and presented to teller Sharon BREWSTER, three (3) personal checks drawn on the personal account of Sarah R. WENDLING, made payable to accused [appellant] having a total amount of $350.00. The accused also used his Washington DC operators permit with photograph as identification.... The true Sarah R. WENDLING was contacted by banking employees and she related that she did not issue any checks to the accused and stated that the checks had to be stolen from her.

\* \* \*

received a copy of the statement of charges "where it sets out what it is you are supposed to have done." Appellant answered in the affirmative. On the record, appellant then acknowledged reading and understanding the facts contained in the statement of charges and discussing them with his attorney. Appellant also stated that he understood that those facts would constitute the State's evidence against him. Finally, the trial court determined that the facts in the statement of charges constituted the subject uttering charges. Accordingly, we hold that there was an adequate factual basis on the record for appellant's guilty plea, and thus the trial court did not err in determining the plea to be knowing and voluntary.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. APPELLANT TO PAY COSTS.**

2–16–94, Sergeant Flynn contacted the true Sarah R. WENDLING who related that unknown individuals had cashed six (6) Nations-Bank checks in the city of Greenbelt, Maryland earlier in the month using the name [of appellant]. Sarah WENDLING related that these six personal checks were forgeries and that her husband believed that he dropped his check book somewhere. She related that she did not sign any of the three (3) personal checks seized on this date and that she does not know the accused.